IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

VIRGINIA PAIGE JENKINS,
ADMINISTRATRIX of the
ESTATE OF ERIN JENKINS,

        Plaintiff,

v.                                                     Civil Action No. 3:15cv355

SHERIFF C.T. WOODY, et al.,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on two motions to dismiss specific counts of Plaintiff Virginia Paige Jenkins's[1] First Amended Complaint: Defendant Sheriff C.T. Woody's Motion to Dismiss Count VIII to the extent it alleges a claim against him (ECF No. 26); and, Correct Care Solutions, LLC's ("CCS") Motion to Dismiss Count VI[2] (ECF No. 31). Both motions have been filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] Plaintiff did not respond to Sheriff Woody's Motion to Dismiss Count VIII and has agreed to dismiss the count as it relates to Sheriff Woody.[4]

---

[1] Because the plaintiff in this matter, Virginia Paige Jenkins, Administratix of the Estate of Erin Jenkins, has the same last name as Erin Jenkins, the subject of this case, the Court refers to Virginia Paige Jenkins as "Plaintiff" and Erin Jenkins as "Jenkins" throughout this Memorandum Opinion.

[2] Count VI is the fifth count listed in Plaintiff's First Amended Complaint. To avoid unnecessary confusion, the Court refers to it as it is identified in the First Amended Complaint.

[3] Fed. R. Civ. P. 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted."

[4] Count VIII alleges negligence by Nurse Crissy Royall, Nurse Aikysah Paige, Khairul Bashar Mohammed Emran, M.D., (collectively, the "Medical Defendants"), and, through the

Plaintiff has responded to CCS's Motion to Dismiss Count VI, and CCS has replied. (ECF Nos. 35, 36.) On December 2, 2015, the Court heard oral argument. Accordingly, the matters are ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[5] and 1367.[6]

For the reasons that follow, the Court will: (1) deny as moot Sheriff Woody's Motion to Dismiss Count VIII; (2) dismiss Count VIII as it pertains to Sheriff Woody; (3) grant CCS's motion to dismiss Count VI; and, (4) grant Plaintiff's oral motion to amend the First Amended Complaint.

## I. Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that,

---

application of the doctrine of respondeat superior, Sheriff Woody. Based on the parties' positions at oral argument, the Court dismisses the allegations in Count VIII to the extent they pertain to Sheriff Woody.

[5] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The First Amended Complaint alleges a Fourteenth Amendment violation pursuant to 42 U.S.C. § 1983.

[6] The Court exercises supplemental jurisdiction over Plaintiff's state law negligence and medical malpractice claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ....").

2

because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## II. Procedural and Factual Background

### A. Procedural Background

On June 11, 2015, Plaintiff filed in this Court a Complaint alleging, on behalf of Jenkins's estate, violations of the Fourteenth Amendment,[7] state law negligence, and medical malpractice. (ECF No. 1.) Sheriff Woody moved to dismiss Count VIII of the Complaint to the

---

[7] The Fourteenth Amendment to the United States Constitution provides, in part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

3

extent it alleged a claim against him ("First Motion to Dismiss"). (ECF No. 16.) On August 10, 2015, after the parties fully briefed the First Motion to Dismiss, but before this Court issued a ruling, Plaintiff moved to amend her Complaint. (ECF No. 22.) On August 11, 2015, the Court granted the motion to amend, denied Sheriff Woody's First Motion to Dismiss as moot, and directed the defendants to file new responsive pleadings. (ECF No. 24.) On August 18, 2015, Plaintiff filed her First Amended Complaint. (ECF No. 25.)

CCS has filed its Motion to Dismiss Count VI of the First Amended Complaint. (ECF No. 31.) Count VI alleges a violation of Jenkins's Fourteenth Amendment right to the provision of medical care as an inmate in need. CCS seeks to dismiss Count VI on the grounds that: (1) any claim arising from the first custom or policy is "uncorroborated by factual allegations to demonstrate the requisite causal link and is purely speculative"; and, (2) the second custom or policy allegedly giving rise to the deliberate indifference claim is "too broad . . . to be considered actionable under [42 U.S.C. §] 1983." (Mem. Law Supp. Mot. Dismiss Count VI First Am. Compl. ("CCS Mem. Supp.") 1–2, ECF No. 32.) Plaintiff responded to CCS's Motion to Dismiss Count VI, and CCS has replied. (ECF Nos. 35, 36.) The Court heard oral argument on December 2, 2015.

### B. Summary of Allegations in the First Amended Complaint[8]

The facts of this case arise out of Jenkins's incarceration at the Richmond City Justice Center (the "Justice Center"). Because Plaintiff brings a claim against CCS alleging a "Policy or Custom of Deliberate Indifference to the Serious Medical Needs of Inmates," the Court outlines the relevant policies and customs of CCS as alleged in the First Amended Complaint.

---

[8] For purposes of a motion to dismiss, the Court will assume the well-pleaded factual allegations in the First Amended Complaint to be true and will view them in the light most favorable to Plaintiff. *Matkari*, 7 F.3d at 1134.

4

### 1. Jenkins's Incarceration at the Richmond City Justice Center

On July 25, 2014, Jenkins became incarcerated at the Justice Center. The Justice Center's records indicate that Jenkins did not suffer from "major medical problems" upon entry. (First Am. Compl. ¶ 26.) Further, Jenkins was "not apparently under influence of alcohol or drugs," and her mental state was "alert, appropriate, logical, etc." (First Am. Compl. ¶ 28.) Jenkins had a prescription for Mobic and Percocet[9] and "was referred to 'Chronic and Mental.'" (First Am. Compl. ¶¶ 27–28.) The Justice Center placed her on an opiate withdrawal protocol. In turn, Jenkins's Percocet prescription was discontinued.

On July 30, 2014, a member of CCS's[10] health care staff reclassified Jenkins as mentally unstable and transferred her to isolation. CCS purportedly reclassified Jenkins in the absence of evaluation, documentation, or explanation. No plan was set forth for a mental health professional to evaluate Jenkins.

On July 31, 2014, Dr. Emran visited Jenkins and suggested that she be transferred to medical and housed on the bottom bunk. Dr. Emran noted that Jenkins: (1) had a history of Percocet abuse; (2) was "oriented, but also hallucinating"; and, (3) was "thirsty." (First Am. Compl. ¶ 32.) Dr. Emran provided Jenkins a Gatorade beverage, and she was relocated to "2 MED FEMALE," with an indication of "Medical/Mental Health." (First Am. Compl. ¶ 33.) Dr. Emran failed to determine the extent of Jenkins's dehydration or her hallucinosis. In spite of

---

[9] The First Amended Complaint does not allege why these medications were prescribed to Jenkins.

[10] CCS is a limited liability company that contracted with Sheriff Woody to provide medical care at the Justice Center. The contract requires that CCS: (1) fully staff the medical department at the Justice Center; and, (2) comply with standards established by the American Correctional Association, the National Commission on Correctional Health Care, the Virginia Department of Corrections, and all federal and Virginia statutes and regulations pertaining to the delivery of health care at "[c]ommunity [s]tandards." (First Am. Compl. ¶ 69.)

Jenkins's dehydration, she was—at a time unspecified in the First Amended Complaint—given meclizine, which Plaintiff contends contributes to dehydration and delirium. In six days, Jenkins lost three pounds. Plaintiff contends "it should have been obvious" at this time that Jenkins suffered from a perforated ulcer. (First Am. Compl. ¶ 36.) Nonetheless, Dr. Emran noted Jenkins's examination as "unremarkable." (First Am. Compl. ¶¶ 32, 35–36.)

The following day, August 1, 2014, Nurse Royall evaluated Jenkins for a punch to the face, but no trauma was noted. Plaintiff alleges that such behavior was abnormal for Jenkins. Nurse Royall subsequently completed an opiate withdrawal evaluation. Jenkins's "Clinical Opiate Withdrawal Scale" rose from "0" to "6," which, on the seventh day of opiate withdrawal, purportedly reflects an unexpected outcome. (First Am. Compl. ¶ 38.) Nonetheless, neither Dr. Emran nor the CCS staff evaluated Jenkins further.

On August 2, 2014, deputies of the Justice Center encountered Jenkins in obvious distress on numerous occasions.[11] On one occasion, Defendant Deputy E. Beaver observed that Jenkins "urinated on the floor and bed of her cell." (First Am. Compl. ¶ 41.) Beaver asked Jenkins whether there was an issue, but "couldn't understand" Jenkins's "jumbled" response. (First Am. Compl. ¶ 41.) Beaver then reported the incident to Nurse Paige. On a subsequent round, Beaver noted that Jenkins had "no chest movement." (First Am. Compl. ¶ 42.) Beaver reported Jenkins's condition to her superiors, but Beaver—trained as a "first responder"—did not perform

---

[11] Plaintiff alleges that "[t]here is . . . a long history of known failures by deputies of the Richmond Sheriff's Office in making necessary security rounds and in responding to inmates in obvious need of medical assistance." (First Am. Compl. ¶ 50.)

cardiopulmonary resuscitation ("CPR").[12] Additionally, Beaver allegedly "tried to call a medical 10-18," but "could not get through." (First Am. Compl. ¶ 42.)

At an unidentified time on August 2, 2014, deputies found Jenkins lying partially on her bed. She was incoherent, incontinent, and not breathing. CPR was not immediately performed. Further, the deputies did not initially call for an "emergency medical 10-18." (First Am. Compl. ¶ 39.) After an emergency call was "finally" made, nurses arrived and administered CPR, noting the absence of a pulse and breathing sounds. (First Am. Compl. ¶ 39.) The nurses continued CPR and applied an automated external defibrillator ("AED") until emergency medical services ("EMS") arrived. EMS then transported Jenkins to the Medical College of Virginia Hospital, where she was placed on life support. Jenkins then died as a result of acute peritonitis, which was purportedly caused by an untreated perforated duodenal ulcer.

### 2. Customs and Policies of CCS

In the years preceding Jenkins's death, Plaintiff contends that CCS either failed to follow or implement policies for conducting: (1) Continuous Quality Improvement ("CQI"); (2) Critical Clinical Event ("CCE") investigations; (3) root cause analyses; and, (4) other forms of morbidity and mortality reviews. Such policies aim to control and reduce the occurrence of negative clinical outcomes within CCS's facilities, including the Justice Center.

In essence, the CCE reporting system requires the reporting of important events to CCS's corporate headquarters for review by corporate leadership. CCS's CCE reporting system

---

[12] Plaintiff alleges that "there is a long history of known failures by Richmond Sheriff's Office deputies to perform basic CPR and to provide basic first aid for inmates/detainees when necessary." (First Am. Compl. ¶ 50.)

specifically intends to report: (1) "sentinel events"[13]; (2) clinical events with significant implications; (3) root cause analyses; and, (4) clinical events that are "high risk" and thus worthy of monitoring or investigation. (First Am. Compl. ¶ 57.) An appropriately handled CCE involves root-cause analyses to determine the cause of negative clinical outcomes, which results in the establishment of criteria for minimizing risk of similar negative outcomes in the future. CCS's CQI likewise aims to prevent negative clinical outcomes. Notwithstanding the CQI and CCE reporting system, CCS purportedly discourages the reporting of negative clinical outcomes.

### III. Analysis

#### A. Sheriff Woody's Motion to Dismiss Count VIII

At oral argument, Plaintiff's counsel agreed to dismiss Count VIII of the First Amended Complaint as it relates to Sheriff Woody. Accordingly, the Court dismisses that portion of Count VIII of the First Amended Complaint and denies as moot Sheriff Woody's Motion to Dismiss Count VIII. (ECF No. 26.)

#### B. CCS's Motion to Dismiss Count VI

For the reasons stated below, the First Amended Complaint fails to plausibly allege that CCS maintained a policy or custom that was deliberately indifferent to the serious medical needs of inmates at the Justice Center, including Jenkins. Accordingly, the Court grants CCS's Motion to Dismiss Count VI. (ECF No. 31.) The Court, nonetheless, recognizes that the allegations of

---

[13] The First Amended Complaint does not define "sentinel event." This Court has defined the term as "an occurrence involving death or serious physical or psychological injury or risk thereof." *Woodson v. City of Richmond, Va.*, No. 3:13cv134, 2015 WL 566780, at *2 n.2 (E.D. Va. Feb. 10, 2015).

the First Amended Complaint make this determination a close one.[14] Thus, the Court also grants Plaintiff's oral motion to amend the First Amended Complaint.[15]

### 1. Standard for 42 U.S.C. § 1983 Claim Against a Municipality Alleging a Custom or Policy of Deliberate Indifference

Because Plaintiff's Count VI seeks relief for a violation of Jenkins's constitutional rights, the Court turns first to 42 U.S.C. § 1983. Plaintiff brings her Fourteenth Amendment claim under 42 U.S.C. § 1983, which provides a private right of action for a violation of constitutional rights by persons acting under the color of state law. "Section 1983 . . . 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred' . . . . Hence, to establish liability under Section 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (citations omitted).

---

[14] At oral argument, Plaintiff's counsel acknowledged deficiencies in the First Amended Complaint. At that time, Plaintiff's counsel requested that, in lieu of dismissal, the Court consider affording Plaintiff an opportunity to amend her complaint a second time.

[15] A party may amend its complaint one time as a matter of course before the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). Once a defendant files a responsive pleading, however, Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule further provides: "The court should freely give leave when justice so requires." *Id.* In the Fourth Circuit "leave to amend . . . should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citations omitted).
Plaintiff readily meets this standard here. At this early stage of litigation, CCS will experience little prejudice if Plaintiff amends the First Amended Complaint. Additionally, CCS has not alleged that Plaintiff acted in bad faith in seeking leave to amend. Finally, this Court cannot find that the filing of an amended complaint would be futile as a matter of law. As discussed below, Plaintiff failed to plausibly allege a narrow enough theory of causation in Count VI, but she raises sufficient claims connecting CCS's policies and the injury to allow amendment.

9

When a plaintiff brings a Section 1983 claim against a municipality, liability attaches only if "an official policy or custom" caused the "unconstitutional deprivation of the plaintiff's rights." *Id.* (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)).

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or[,] (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). Importantly, "municipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be a means by which [a] particular [constitutional deprivation] . . . might have been averted." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).

### 2. Standard for Due Process Violation for Deliberate Indifference to Serious Medical Needs

The Due Process Clause of the Fourteenth Amendment "mandates the provision of medical care to detainees who require it." *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (citation omitted); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998). Thus, when evaluating the constitutionality of an arrestee's claim, the Court must determine whether the government was deliberately indifferent to the detainee's serious medical needs. *Harris*, 240 F.3d at 388. Because CCS, a private corporation acting under the color of state law, purportedly caused the alleged constitutional violation in this case, the Court must determine whether CCS had "an official policy or custom" of deliberate indifference to the serious medical needs of inmates at the Justice Center. *Mitchell*, 308 F. Supp. 2d at 692 (citing *Monell*, 436 U.S. at 694).

### 3. Plaintiff Does Not Plausibly Allege That CCS's Failure to Investigate the Prior Negative Outcomes of Patients Caused Jenkins's Death

Plaintiff fails to plausibly allege causation with respect to her Fourteenth Amendment claim of deliberate indifference. In order to plausibly allege a § 1983 claim for municipal liability, Plaintiff must allege that: (1) CCS had a policy or custom of deliberate indifference to the violation of Jenkins's constitutional rights; and, (2) this policy or custom caused the complained of constitutional violation. In this case, no issue exists as to whether Plaintiff alleged a policy or custom of deliberate indifference. Indeed, it is beyond dispute that Plaintiff plausibly alleges, at least, that CCS failed to investigate prior negative patient outcomes.[16] (First Am. Compl. ¶¶ 66–67, 124.) Thus, the focus of the Court's analysis is whether Plaintiff plausibly alleges that CCS's policy or custom of failing to investigate prior negative patient outcomes *caused* harm to Jenkins. She does not.

A plaintiff seeking to establish municipal liability must plead that the municipality's custom or policy actually caused the constitutional violation. *Monell*, 436 U.S. at 658. Here,

---

[16] Plaintiff specifically asserts that CCS's Chief Medical Officer, Dr. Dean Reiger, admitted under oath that company lawyers discourage investigations in circumstances where future litigation can be anticipated. (First Am. Compl. ¶ 65.) Plaintiff further alleges that CCS's in-house counsel has confirmed this notion. (First Am. Compl. ¶ 64.)

To the extent Plaintiff alleges constitutional violations as a result of other, unidentified policies or customs, however, the First Amended Complaint fails to state a claim for which relief can be granted. The Fourth Circuit has held that "municipal liability will attach only for those policies or customs having a 'specific deficiency or deficiencies . . . such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Carter*, 164 F.3d at 218 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)). Thus, Plaintiff must "identify the offending [corporate] policy [or custom] with precision." *Id.* at 218; *see also Roulhac v. Prison Health Servs., Inc.*, No. 3:10CV408, 2011 WL 6750559, at *4 (E.D. Va. Dec. 23, 2011) (alterations in original) (dismissing § 1983 claim against a municipality because the complaint failed to identify a corporate policy with precision), *aff'd*, *Roulhac v. Janek*, 518 F. App'x 160 (4th Cir. 2013). For instance, elsewhere in the First Amended Complaint, Plaintiff includes allegations regarding the "long history of known failures" at Richmond jail facilities. (First Am. Compl. ¶ 50 (alleging history of failures regarding CPR and security rounds).) These claims, however, pertain only to the Richmond Sheriff's Office, not CCS.

11

while Plaintiff alleges that CCS's unconstitutional policy or custom was "a direct proximate cause of Ms. Jenkins'[s] death," (First Am. Compl. ¶ 129), "merely pleading the magic words of causation is insufficient to pass a complaint through the Rule 12(b)(6) crucible," *Mitchell*, 308 F. Supp. 2d at 694. "[T]he court need not accept as true 'conclusory allegations regarding the legal effect of the facts alleged.'" *Id.* (quoting *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995)). Accordingly, the Court must determine whether Plaintiff plausibly alleges that the failure to investigate the prior negative outcomes of patients was, in fact, a "moving force of the constitutional violation." *Milligan*, 743 F.2d at 230 (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)). The Court concludes that Plaintiff's allegations of causation are conclusory and require the Court to speculate—rather than infer—the causal link between the custom or policy and the constitutional violation alleged by Jenkins.

In her First Amended Complaint, Plaintiff contends that CCS failed to classify Jenkins correctly, evaluate her symptoms, and properly document her condition. (First Am. Compl. ¶¶ 30, 32, 34, 38.) According to Plaintiff, these failures plausibly state a causal link between the constitutional violation suffered by Jenkins and the custom or policy of deliberate indifference. Accepting these allegations as true, however, the First Amended Complaint demonstrates only that CCS failed to investigate negative patient outcomes and adequately treat Jenkins. Plaintiff neglects to link the two events and, in turn, fails to allege the level of causation that exists between them.

While recognizing that she need not articulate her theory of the case with pinpoint precision, to plausibly allege a "moving force of the constitutional violation," *Milligan*, 743 F.2d at 230, Plaintiff must include at least some plausible assertions indicating *why* a failure to investigate negative patient outcomes resulted in the mistreatment of Jenkins. In particular,

Plaintiff must identify some level of action or inaction more directly related to Jenkins's harm. The First Amended Complaint is bereft of allegations of causation that tie CCS to Jenkins's injury as a moving force. Indeed, nothing in the First Amended Complaint articulates the specific effect of CCS's failure to investigate negative patient outcomes that ultimately caused the mistreatment of Jenkins. Without such allegations, Plaintiff's entitlement to relief is merely conceivable. *See Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)).

Accordingly, with respect to Count VI, Plaintiff does not plausibly state a claim for which relief may be granted. Thus, the Court grants CCS's Motion to Dismiss Count VI. (ECF No. 31.) However, for the reasons stated from the bench and in this Memorandum Opinion, the Court also grants Plaintiff's oral motion to amend the First Amended Complaint.

### IV. Conclusion

For the foregoing reasons, the Court: (1) denies as moot Sheriff Woody's Motion to Dismiss Count VIII; (2) dismisses Count VIII to the extent it pertains to Sheriff Woody; (3) grants CCS's motion to dismiss Count VI; and, (4) grants Plaintiff's oral motion to amend the First Amended Complaint.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 12-11-15